et al. Mr. Goldberg for the appellant, Mr. Rosenberg for the appellees. Good morning, Your Honors. Jay Goldberg for the... Okay, Mr. Goldberg, good morning. Good morning, Your Honors, and thank you for granting oral argument in this case. If you'll favor me by looking at the appendix 168, it indicates that the decision that the committee rendered in Rangel's case was dependent upon outside counsel Billy Martin's analysis, and that's what 168 says. Billy Martin was never, ever tasked with performing any function whatsoever with respect to Congressman Rangel. He was engaged by the committee. He was tasked with the undertaking of weather at the investigative stage, which is comparable to the grand jury, and he says the best way to analyze this case is in terms of criminal trials. Congresswoman Waters' matter was before the investigative committee. That's the grand jury. And the question was whether there was ex parte communication by counsel, and he analyzed, and I don't think I agree with him, that under Rule 19, maybe Rule 19, there can be ex parte communication with members of the grand jury. That we can argue. Mr. Goldberg, let me ask you something that's very basic here. What is the specific injury that you are alleging? The specific injury you're alleging, what is it? Well, the loss of property rights. What's the property interest here that you've alleged? As the court, since Goldberg against Kelly has announced it, it's not in terms of real property. It's the loss of expectation of a promise granted by the, and promised to the agreed party, of some benefit. And what is the benefit here that was the surprise? The promise that if the proceeding took place, it would be conducted fairly, impartially, and according to principles consistent with due process. But that has to be more than process, right? You cite the Supreme Court's case, Town of Castle Rock. But Town of Castle Rock stands for the proposition that an entitlement to nothing but procedure is not enough to be a cognizable constitutional interest. So how do you... I'm sorry. What is there that you're alleging beyond an injury to an expectation of fair procedure? Well, the result is punishment. In other words, if the expectation and the procedures are not followed, he is dealt with in terms of punishment. But that's not the analysis the court has told us to undertake. We are supposed to always look in the first place at the nature of the injury, the nature of the harm. Now, you did allege a property interest below. You allege a reputational interest. But you haven't raised that here. No, I abandon that. I don't. I don't make any claim with respect to reputation. I claim that... So you claim that there's a property interest here and an expectation of fair proceeding. A fair proceeding made by the forward to the rules, made by Congresswoman who is chairman of the committee, Ms. Loughran, and by Congressman McCall. Now, please understand that Mr. Martin's report says you analyze this, as I told you, in terms of a criminal case. The investigative committee is the grand jury. The adjudicatory subcommittee is the trial committee. The investigative subcommittee, he says, they can be ex parte communications. In the adjudicatory subcommittee, if you look at 77 and 78, Congressman McCall says that when we act in this capacity as members of an adjudicatory subcommittee, we act as judges do. As judges. He says this several times. And the question then is that acting as judges, can they be subjected to the kind of ex parte communications that Mr. Chisholm, who is chief counsel to the committee, outlines in his letter at page 44. It takes him a number of pages, and he says this is not even the complete story. This is just some examples. And notice that it's undated, and I'll get to that in a moment. I'm sorry. I have some questions. Normally when we have a member of Congress before us, they typically are invoking the protection of the immunity of the speech or debate clause. But here you're arguing that it doesn't apply. Could you help me understand why? I will. Okay. The speech and debate clause, Bruce holds, is meant to preserve the integrity of the legislative investigative function. Here, everybody... Could you answer that for me? I'm just looking at the language of the clause. I can't answer that. I can only answer it on the basis of what the Supreme Court has said. It says that anything that a congressman or congresswoman says, consistent with the dignity of the legislative or investigative process, is protected. Otherwise, they become super citizens. And that's clearly in Brewster. You can't read what occurred in this case. Let me read to you what the Supreme Court said in Gravel. Insofar as the clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. Is this a matter that is placed within the jurisdiction of either House? It is, but you judge what the member is. It fits within that understanding of Gravel, and it's part of an integral part of the deliberative and communicative processes, isn't it? It is not part of the deliberative process. How so? Help me understand that. They roamed at large gathering information that was not consistent with their role as members of the investigative committee. Can you be more specific about what you mean, they roamed at large in a way that wasn't consistent with their role? Is it getting information? Congressman McCaul sent his chief of staff to meet with Deputy Chief Morgan Kim to discuss the facts of this case. Is that not something they're permitted to do? What is that? Isn't that not a form of speech within the House? No, because the decision has to be made on the basis of the evidence that's presented in the courtroom, in the adjudicatory hearing room. Congresswoman Laughlin makes that clear. The violations that are listed here in McCaul's letter... How are we to determine if the speech that you're describing fits within this notion of integrity and deliberative? All right. How do we do that? Very simple. If you're a judge and assume that these people are judges, as they say they are, does a judge see people on an ex parte basis? Is that legitimate judicial function? So if we were determined that a member of Congress does something on the floor of the House in a speech that isn't consistent with principles of deliberation and integrity, that speech could be called into question? No, we're dealing with a committee, and that's a group of eight people who have committed themselves... Is there a distinction under the law between something a committee does and what occurs on the floor of the House? I think so. There's no warrant in law for that. The law is charged with a specific function, Your Honor, and they are to act as judges. And the question is... And if they don't, then they lose the protection of the... Well, yes. If they make mistakes, they lose the protection of the... Because the Supreme Court has said that they can check on the implementation of the rules to see whether a person's constitutional rights are protected. And the judge himself, at page 24 of his opinion, says that while the House can make rules, courts have a function to determine whether the implementation of the rules is consistent with due process and whether a person, a congressman, has received protection of his constitutional rights. Now, I ask you as judges... Wait. So is your position... Make sure I understand it. Is your position just with respect to this particular ethics subcommittee and the role, the quasi-judicial role that it performs, or would your argument apply to the operations of every committee? The operations of the what? I'm sorry. So is your argument limited to the operations of the ethics committee because it has this unique role? Yes. Or would your argument apply to every committee? Well, forgive me. I don't want to answer for every committee. I focused my attention on the ethics committee, which has the highest standards, a standing committee, and its ethical obligations are of great importance. To see that the ethics committee itself is acting in a way inconsistent with how a judge would act gives me pause for concern and gives the committee counsel pause for concern. Because he says that he was considering moving to dismiss the action because there was so much ex-party, unauthorized submission of incorrect as well as information that was not supported by the record to the Republican members. And he, at least three times, points out how dangerous this is to the functioning of the system. Also, he says, and this is very disturbing, he's looking for a motive for their behavior. And he says he can't put his finger on it, but he believes it's racial. And he gives two references and says there's more to the story, but you only have part of the story. Though that memorandum be like eight or nine pages, it has a statement in there that this is not the complete story. And please, as I conclude, recall that what I said, and you can call upon my opposition if you so choose. Billy Martin never touched the subject that we're talking about. He only touched on the subject of the grand jury with Representative Waters. When I asked him would he expand it, he said no. And so the reference that they're going to decide the case on the basis of Billy Martin is absolutely ridiculous. And, Your Honors, if what you say is so, then the whole principle that the judge himself acknowledges, that courts have a role to play in determining whether a committee has violated an individual's constitutional rights, would be meaningless. If you carry your argument to the extreme, we never get to the point where courts... Can you point me to instances where courts have in fact done that? Have come to vindicate the claim of someone who says they were mistreated by a committee? Yes, the judge himself gives you the cases. And I give you the cases. And Judge Kurtz... Remind me of one or two of them. What's that? Remind me of one or two of them. All right. Baker against Kurtz. I'll read that to you. That's the opinion of Judge Ginsberg when she sat in this court. And Ballin against the United States before your time, of course, 1894. It's a consistent line of cases. If you look at the judge's opinion, you'll see he gives you the cases. In the middle of his opinion, he gives you a number of cases where courts have undertaken not to disturb the rules, but they have the right, and the classic word is implementation. Has the implementation of the rules offended someone's constitutional rights? That's Baker against Kurtz, and that's Ballin against the United States, 1894. And in this case, it's not conceivable that the defendant's constitutional rights were observed when the judges, Only half the judges, the Republicans were only half, were given material. Questions were framed how to present the case. Notice how the use of the phrase, the nuclear option. Mr. Goldberg, beyond your time, we'll give you a couple minutes to reply. Thank you. All right. And I understand you have a back problem and are going to remain standing, which is fine. I'll see. All right. Mr. Rosenberg. Good morning, Your Honors. I may please report Isaac Rosenberg for the defendant, or pardon me, the affilees. And joining me at council table is Carrie Kirchherr, general counsel for the House. Can you bring that? Thanks. Yeah. Congressman Rangel invited Judge Bates below and invites this court here to do something extraordinary, unprecedented, and ultimately unconstitutional, effectively to undo his censure by the House of Representatives of the 111th Congress. Judge Bates correctly rejected that imputation on three independent and independently dispositive grounds, speech or debate, political question, and standing. I'm going to focus on speech or debate briefly and respond to a couple of points that opposing counsel has raised. The first thing I want to make sure the court understands is, irrespective of what the purpose of the speech or debate clause is, the purpose is not coextensive with the standard that the privilege is measured against. It's absolute when it applies. There's been no dispute of that. It applies to members and their aides, and all the affilees in this case are either members or their staffers or the clerk solely for relief purposes. But importantly, the privilege protects acts that are an integral part of performing the House's business, including, as Judge Griffith noted, discipline of members and the contents of the House journal. It seems as though, before this court, Congressman Rangel's case hinges on this notion that a claim of an unworthy purpose is enough to render the privilege invalid. That's simply not true, and that would violate a longstanding line of Supreme Court cases and precedent in this circuit. So unless the panel has any other questions. Yeah, no, I do. So would you respond to Mr. Goldberg's point that there's a role for the courts when a committee of Congress trenches upon someone's constitutional rights? Committee of Congress brings somebody before them to investigate for whatever reason, and they violate the person's constitutional rights. Do we have no role to police that? Critical to answering that question is who is suing whom and for what. And in the cases cited by Congressman Rangel and identified by Judge Bates below, those cases did not involve cases against members of Congress for their acts. They involved people outside of the House facing consequences for actions they took before the House, and in deciding those cases, criminal cases, the courts looked to see whether the House complied with its own rules. Of course, here the suit is brought against by one member against other members of Congress and their staffers. Well, the suggestion is that Congress, that the courts will intervene when a committee of Congress is treating a private citizen shabbily but has no role to intervene when treating one of its own members shabbily? Is that what the law teaches us? I would write the court's attention to Powell v. McCormick as an example. Powell was a member who was excluded from the House and claimed that the House did not have the power to exclude him, and he brought an action against not only members of Congress but also officers of the House. And the Supreme Court in that case allowed the case to go forward against the officers but not against the members, irrespective of allegations of unconstitutional conduct by the members. Same issue here. So what if the Ethics Committee had decided that, and this is completely hypothetical, I'm not suggesting it's true at all, in actuality, but what if it were a different time in our country and every time an African American member was elected to Congress, the Ethics Committee voted to have that person either censured or expelled? And it was all on racial grounds. Would there be any role, no outside people, all inside, would there be any role for judicial review? Again, Your Honor, the answer to that question hinges on who's suing whom and for what. Okay. The expelled member is suing the Ethics Committee and its members for the expulsion. To answer that question, I want to address a particularly important factual notion. The way that the committee functions is it investigates allegations of wrongdoing. I'm asking a hypothetical little question about our ability to review. It doesn't really turn on how a committee is structured now. In my universe, it is a certain time in this country when racism was rampant and a majority, let's assume, and again it's hypothetical, I'm not suggesting this ever actually happened, that a majority of the House or Senate didn't want any African American members and so used this process to expel them, invoking its power under the clause to expel members upon a two-thirds vote. Supreme Court precedent from Eastland, including Brewster, allegations of improper motive are simply off-limits for the judiciary when you have a suit against members. So the answer is no, there's absolutely nothing a court could do in that setting. The court could not, pardon me, the members who were sued would be entitled to immunity irrespective of allegations of an improper motive. There's nothing at all that could be done then? In a suit by a member against other members, alleging an improper motive for matters that are within the jurisdiction of the House under the Constitution, those members would be entitled to the immunity of the speech or debate clause. And what about the interests of the people who elected those representatives and actually having their representatives seated as in Powell? If there are constituents who are aggrieved by that determination and there's someone, a proper defendant, whom they could sue to seek relief? That's what I'm asking you. So if the member and other constituents wanted to sue, whom would they sue to stop, if there actually were to be established a rampant problem of race discrimination, gender discrimination, you name it, religious discrimination, to expel or to censure. We're just going to humiliate on a regular basis members based on a constitutionally protected status. If there was an officer of the House who was given the charge of enforcing it, the members themselves would be absolutely immune. Whether other people could be sued, if it were proven that the action of the House was unconstitutional,  And Chisholm, Kim, and Sovrin were not members' staffs. They were subcommittee staff? They were committee staff. They were committee staff. So were they anybody's alter ego? Whose alter ego would they be for purposes of the speech or debate clause if they were committee staff? The committee staff on the Ethics Committee are professional staff. They serve all the members of the committee irrespective of party affiliation. So just like if you have the judges, you'll have law clerks or staff attorneys for the court. The staff attorneys don't serve just a single judge on the court. They serve the entire court. So they serve all the members of the committee. But the speech or debate immunity doesn't apply to Congress as an institution. It applies to individual members and their staff. And so I'm trying to understand, did the members of the committee vote here, adopt a resolution, as happened I think in the gravel where the chief counsel was being sued, something to take their immunity and say we wish to share it with this person because we endorsed them as having worked for us in this context? I don't think that there's a requirement that they do so expressly. But nothing happened like that? The members of the staff are chosen by majority vote of the committee. And just like the committee itself and the members of the committee are entitled to speech or debate privilege, when the staffers are performing functions that are within the jurisdiction of the committee, they are entitled to speech or debate privilege. Has it been the determination of the House of Representatives to provide them a defense in this case? Your Honor, the staff have police, the staff have police, have their own counsel. So the House hasn't decided to defend them. I'm just trying to figure out why. Why is that? Yeah, why is that? If they, in fact, alter ego of members who have been sued, why doesn't the House provide them defense? There are a number of reasons why defendants in a case might not have the same counsel. But just because an individual who is a staffer, a former staffer of the House, doesn't have the benefit of House counsel to represent them doesn't mean that they can't assert their privileges. I'm really kind of confused because from how we know that institutional employees of the Congress or of the House or of the Senate, like the clerk or sergeant-at-arms, don't get this immunity. And individual members and their individual aides do get that immunity, at least if the member wishes to give it to their aide. The member has, it's like an attorney-client privilege. The member controls this privilege. And at least in most of the cases I've seen, when it comes to committee staff who are institutional employees, not member employees, does there need to be some indication, either a vote of the members of the committee, to say that we are giving our immunity to them? How does it transfer from the individual member to these institutional employees? Your Honor, when the committee conducts its business, and that business is one of those matters entrusted to it by the Constitution, we are in very much within that legitimate sphere. But you're saying the clerk of the Congress writing down the votes, right? That would be the exact same thing. I'm trying to understand how their institutional role is different than what happened in Powell. Well, importantly in Powell, what was at issue was conduct going forward rather than retrospective conduct. No, but that doesn't change. The nature of the speech or debate immunity is a member-held immunity. It's not an institutional immunity. There might be separation of powers concerns that would create immunities in certain contexts. But speech or debate is an individual member immunity. And the President has said they can give it or take it away from their individual aides. But we have this distinction that you seem to be pointing out and thought was important between individual members, their individual staff, and institutional employees. And committees, that sounds to me like an institutional employee. The House conducts its business through its members and through its committees and the membership of the committees. And if Your Honor is having… But the committees aren't some free-acting entity. They are a mechanism through which members act and make decisions. They don't have a life of their own, do they? You're correct. The committees conduct their business through their members. And if the conduct at issue here that the staff was allegedly engaged in would be privileged if the members themselves performed it, then those activities are also privileged, just as if they were performed by the member. Well, then, so if the Clerk of Congress or something, the Clerk of the House or Senate, did something that a member could do, couldn't a member record votes? Could a member have done what was the actions that were challenged in Powell v. McCormick? Yes, if a member could have done that. So the fact that a member could do it doesn't tell us. There seems to be an institutional versus individual line in the case precedent. No. Okay, a fact question. Chisholm, Kim, and Sovereign, are any of them still even employed by the House? No, Your Honor. Or by Congress in any capacity? No. None of them works for the House anymore. Okay. Do you have any more questions about this? All right, thank you. Thank you. Does Mr. Goldberg have any time? Yes, I want to call Your Honor's attention to page 23 of our brief. It sets forth the authority of courts to deal with the, and the key word is implementation, of the rules as to whether they meet constitutional standards. But don't all those cases involve private citizens? None of them involves a member of the institution who's bringing a claim that he or she has been treated poorly? The cases you're citing don't involve a member of Congress who's bringing... No, I don't have any member of Congress. That's right, that's right. I just have a role as delineated by these cases and recognized by the court below. Your Honors, there were eight judges. Four were approached by the serial, errant members of Mr. Chisholm's staff, and they were furnished with material that wasn't available to other members. Silence showed consciousness of guilt. The members didn't disclose it to the Democratic members, and on that basis... Let's imagine we were having an impeachment proceeding against a federal judge or the President of the United States, and there was some of these sort of shenanigans that you're talking about right now, ex parte communications with senators, things of this nature. Would the defendant in the impeachment proceeding have the ability to come to federal court to preserve his or her constitutional rights to be treated fairly in that proceeding? Impeachment judges can't come to court. But with respect to... Why is that the case? Because Article 1, Section 6 says that impeachment of judges is solely for that. And as Chief Justice Warren says, barring that, you can always come to court and in power. He came to court, and he claimed that Congress had violated his rights. So impeachment is the classic political question because it's been textually committed to this. But disciplining its own members is not? No. Why? I'll tell you why. Justice Warren points out that Article 1, Section, I think it's 3, says that impeachment of a judge is solely the responsibility of the House, whereas other matters, such as this, is for the court to decide. Of course, there's nothing that would... But they've never said disciplining a member is something for a court to decide. Except Powell v. McClellan. Is that a case where a congressman claimed that his rights were violated, and the court stepped in to assist him? That's a case, is it not, Your Honor, where a member of Congress invoked his right to hold a position, and the court didn't say, well, that's for the House to decide. The Supreme Court decided that Powell's rights were abridged, his constitutional rights were abridged, and they stepped in. They didn't say it's a political controversy, or it's a matter relegated solely to the House, as to whether he should stay in. It cannot be that where you have eight judges, four are loaded up with material, some of which Chisholm says is unsupported and incorrect, and read his memo, which was recently discovered after the House session had ended, and see how concerned he is about what has occurred. Now, let me quickly do this. Judge Bates says these are procedural irregularities. These are not procedural irregularities. These are of constitutional magnitude, the right of confrontation, cross-examination, and my motion was made within a few days of the discovery of the document that Mr. Chisholm sends out. This is not a case where it doesn't rise to an element of constitutional magnitude. This is a case where, instead of the session beginning at 10, it began at 11 procedural irregularities. That's ridiculous. Now, let me say this to your eyes. On two occasions, I sent in a request for oral argument. Had it been granted, this thing might have been straightened out. It was as though it was sent to another chamber. There was no discussion, no exercise of discretion, heard nothing from the judge, and he denied the motion. If I had a chance at oral argument with two requests, I might have pointed out to him, although I don't think a judge really needs this, that if a panel of judges is sitting, it's not appropriate, and it could rise to issues of constitutional magnitude to submit to half of the panel material, engage in ex-party conversations with them, and look at the risk. All right, Mr. Goldberg, you're repeating yourself. You know what? I appreciate your patience. All right. Thank you.
judges: Henderson, Griffith, Millett